BRYAN SCHRODER
United States Attorney

JONAS M. WALKER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: jonas.walker@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  vs.<br><br>PAUL BRIAN SILVIS,<br><br>                Defendant. | No. 3:19-CR-00036-01-SLG |

**SENTENCING MEMORANDUM**

**I.  REQUESTED SENTENCE**

    **Incarceration** ........................................................................................ **15 months**

    **Supervised Release** ................................................................................. **3 years**

    **Restitution** ........................................................................................ **$2,500.00**

    **Fine** ................................................................................................ **$119,000.00**

**Special Assessment** ................................................................................$200.00

## II. SENTENCING GUIDELINES

The presentence report ("PSR," doc. 36) calculates a total offense level of 12, a criminal history category of I, and a Guideline range of 10-16 months. As explained below, the United States timely objected to a different guideline calculation in the draft presentence report, and, now, respectfully maintains its previously-stated objection. *See* Dkt. 36 at 18.

The government maintains that the correct offense-level calculation is as follows:

| § 2Q2.1: Base offense level | +6 |
|---|---|
| § 2Q2.1(b)(1): Pecuniary gain | +2 |
| § 2Q2.1(b)(3)(A): cross reference to § 2B1.1 regarding market value of $121,500.00 | +8 |
| **Subtotal** | **16** |
| § 3E1.1: Acceptance of responsibility (if applicable) | -3 |
| **Potential Total Offense Level** | **13** |

The government concurs with the PSR that the defendant is in criminal history category I.

The applicable guideline ranges are, therefore, 21-27 months (without acceptance of responsibility) or 12-18 months (with acceptance of responsibility). Consistently with the Plea Agreement (Dkt. 29 at 2), the government is recommending a sentence within the Guideline range.

//

## III. VALUATION OF WILDLIFE

The valuation of wildlife is a central issue in this sentencing, as it affects the guideline calculation and the 3553(a) factors. For the reasons explained below, the controlling law in the Ninth Circuit is that the value of a wildlife under the Lacey Act "is best represented by the amount a hunter is willing to pay for the opportunity to participate in the hunt." United States v. Atkinson, 966 F.2d 1270, 1273 (9th Cir. 1992).

A) Under controlling precedent, the value of the wildlife is the price of the hunt.

Atkinson involved similar facts to this case in that the defendant operated a commercial enterprise that sold deer hunts. The defendant "charged a base fee of $1,500 to participate in a hunt. In return, he provided meals, lodging and guide services. He also promised to supply each hunter with a valid Montana state hunting license." Atkinson, 966 F.2d at 1271. In violation of the Lacey Act, the defendant guided some clients without acquiring valid state hunting licenses (Id. at 1271-1272), and instructed others to falsely tag taken deer (Id. at 1272). The defendant was convicted at trial and argued on appeal that "the court erred in allowing the jury to consider the price of his guide services in determining the market value of the deer." Id. at 1273.

The Ninth Circuit affirmed the conviction, holding that United States v. Todd, 735 F.2d 146 (5th Cir. 1984), "sets forth the proper method for valuing game taken on a guided hunt." Id. at 1273. In that case, "[t]he Fifth Circuit held that because an offer to provide guide services is an offer to sell wildlife under the Act, the best indication of the value of the game 'sold' in this manner is the price of the hunt." Atkinson at 1273 (quoting Todd)

U.S. v. Silvis
3:19-CR-00036-01-SLG

Page **3** of **9**
Case 3:19-cr-00036-SLG-DMS   Document 39   Filed 01/14/20   Page 3 of 9

(internal quotation and punctuation omitted).

> A violation of section 3372(c) does not involve a "sale" of game in the traditional sense; rather, under section 3372(c) the commodity being "sold" is the opportunity to illegally hunt game with the assistance of a guide. *See* Stenberg, 803 F.2d at 436 (an ordinary person would view the sale of guiding services "as providing the buyer the opportunity to kill wildlife, ... [not] an actual sale of the wildlife itself"). As a result, the value of an animal taken in a guided hunt bears little relation to the market price of its parts. Instead, as the Fifth Circuit recognized in Todd, its market value is best represented by the amount a hunter is willing to pay for the opportunity to participate in the hunt.

Atkinson, 966 F.2d at 1273 (citing United States v. Stenberg, 803 F.2d 422 (9th Cir. 1986)).

Further, the Ninth Circuit specifically rejected the Atkinson defendant's argument, similar to the argument raised by the defense in this case (Dkt. 38 at 5), that state statutes regarding wildlife should determine the valuation of the animal for Lacey Act purposes.

> Atkinson also suggests an alternate method for determining market value in this case. Montana Code § 87-1-111 requires a person convicted of illegally killing a deer to "reimburse" the state $300. Atkinson argues that this figure should be conclusive of a deer's market value for purposes of the Act. We reject this argument. Atkinson has produced no evidence that Montana intended section 87-1-111 to define the market value of deer taken in violation of state law. Nor do the fines established under this code section appear to bear any resemblance to the actual market values of the animals listed.

Atkinson at 1274.

In this case, the defense's reference to Alaska Statute 16.05.340 is unavailing, precisely for the reasons explained in Atkinson; *i.e.* there is no reason to believe that the Alaska Legislature intended that statute to establish the fair market value for unlawfully taken wildlife. Rather, AS 16.05.340 establishes the "fees for licenses, permits, and tags." Thus, under AS 16.05.340(a)(21)(H), $1,000 is not the "value" of an illegally taken moose; it is the price for a nonresident alien to legally buy a moose tag. Likewise, AS

U.S. v. Silvis
3:19-CR-00036-01-SLG

Page **4** of **9**
Case 3:19-cr-00036-SLG-DMS   Document 39   Filed 01/14/20   Page 4 of 9


16.05.340(a)(21)(B) establishes $1,300 as the price for a nonresident alien to buy a brown bear tag, rather than the value of a brown bear taken in violation of the Lacey Act. Further, *even if* the State Legislature *did* intend to express its opinion regarding the value of unlawfully taken moose and bear, that opinion would not control this Court's application of the Lacey Act. *See, e.g.*, United States v. Diaz, 838 F.3d 968, 972 (9th Cir. 2016) ("Federal law, not state law, governs our interpretation of federal statutes").

It does not appear that the Ninth Circuit has overturned Atkinson. Moreover, it appears that Todd remains the controlling law in the Fifth Circuit.

In conclusion, the government respectfully requests the Court find, pursuant to Atkinson, that the value of the animals taken in violation of the Lacey Act is the price of the hunts; *i.e*. $121,500.00, the amount the defendant acquired by unlawfully selling and providing guide services, as agreed to in the Plea Agreement (Dkt. 29 at 4).

**B) The PSR and defense err by relying on out-of-circuit authority.**

Neither the defense (Dkt. 38) nor the PSR refer to Atkinson. Rather, both the PSR and the defense rely on a Tenth Circuit case that specifically disagreed with Atkinson, *i.e*. United States v. Butler, 694 F.3d 1177 (10th Cir. 2012). In that case, the Tenth Circuit held that:

> [t]hus, to the extent that Atkinson holds that the entire cost of a hunt constitutes the "fair-market retail price" of a targeted animal for purposes of § 2Q2.1 application note 4, we respectfully disagree with its conclusion. We hold that the "fair-market retail price" must be the price of the animal itself, not the price of an expedition to hunt the animal.

Butler at 1182.

Of course, this Court is bound to follow the law of the Ninth Circuit,

U.S. v. Silvis
3:19-CR-00036-01-SLG
Page **5** of **9**
Case 3:19-cr-00036-SLG-DMS   Document 39   Filed 01/14/20   Page 5 of 9

notwithstanding the apparent circuit split between the Ninth and Fifth Circuits (*i.e.* Atkinson and Todd) versus the Tenth circuit (*i.e.* Butler). *See, e.g.* Zuniga v. United Can Co., 812 F.2d 443, 450 (9th Cir. 1987) ("District courts are, of course, bound by the law of their own circuit, and are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be") (internal quotation and citation omitted).

Moreover, even if this Court were to find Butler persuasive, it is unclear what answer Butler points to. The Tenth Circuit did not answer the question how to value animals taken in violation of the Lacey Act; rather, it remanded to the district court.

> Because the record in this case does not contain evidence to support the district court's apparent finding that the retail price was difficult to ascertain, we must reverse its conclusion. We remand to allow the district court to ascertain the actual retail market value of the deer. If evidence at resentencing suggests that direct valuation is difficult or impossible, the court must make a determination to that effect before using other measures to estimate the animals' value.

Butler at 1182–1183 (internal citations and citations omitted).

Therefore, the government respectfully submits that Butler is not controlling and, even it were, it does not provide helpful guidance to the Court in determining value.

## IV.  FACTORS ENUMERATED BY CONGRESS IN 18 U.S.C. 3553(a)

### 1. (a)(1): Offenses and offender

The approximate 6.7 million acres of the Noatak National Preserve include remote and pristine habitat for Alaskan wildlife. The defendant, a resident of Idaho, repeatedly violated state and federal law by unlawfully providing guided bear and moose hunts in the Noatak National Preserve. The defendant was motivated by pecuniary gain, as illustrated by the fact that he acquired approximately $121,500.00 by unlawfully selling and providing

guide services, which resulted in the unlawful taking of seven brown bear and one moose.

    **2. (a)(2): Needs of the sentence**

General deterrence is among the most important sentencing factors. Lacey Act violations cause significant environmental damage, are often difficult to detect, and are committed in the context of the highly-regulated guiding industry. By committing these offenses, the defendant not only harmed the natural resources of the Noatak National Preserve, but, also, greedily diverted business away from law-abiding guides. The financial success of legitimate guides depends, in part, upon courts imposing sufficient sentences to deter people from undermining their businesses by selling illegal poaching trips.

Another important sentencing factor is the seriousness of the offense. The unlawful taking of seven brown bear, and one moose, by a defendant who knew that he was breaking the law for seven years, as he returned year after year, from outside Alaska, is a serious violation of the Lacey Act. A sentence within the guideline range will reflect the seriousness of the offense.

    **3. (a)(3): Kinds of sentences available**

Although the plea agreement permits the government to recommend a significant Community Service Payment (Dkt. 29 at 8), the government has considered the defense's arguments in opposition. The government respectfully proposes the Court impose a fine consistent with the funds acquired by the defendant, less restitution ordered to any hunters and the State.

//

### 4. (a)(4): Sentencing range

The government's proposed sentence is within the applicable guideline range.

### 5. (a)(6): Need to avoid unwarranted disparity

The defense identifies two cases for disparity analysis, one of which is *United States v. Lackner*, 3:17-cr-87-02-TMB (Dkt. 38 at 7-8). In *Lackner,* Judge Burgess disagreed with similar arguments the defense asserts in this case, and held that <u>Atkinson</u> was controlling regarding valuation of wildlife taken in violation of the Lacey Act.

Moreover, in advocating for probation without incarceration, the defense refers to *United States v. Cassidy* (4:10-cr-12), whereas the United States submits that *United States v. Dixon* (4:15-cr-23), which resulted in a sentence of 16 months (Dkt. 32 in *Dixon*), is a more appropriate comparison. Cassidy was a licensed guide outfitter who, between 2005 through 2009, violated his special-use permit to engage in illegal hunts in the Arctic National Wildlife Refuge. *See* Plea Agreement, Dkt. 32, in *Cassidy*. At the other end of the spectrum is Dixon, who was neither a licensed or registered Alaska big game guide, but, from 2008 through 2013, transported and outfitted various individuals at a remote base camp and various camps in the Noatak National Preserve for the illegal take and transport of bull moose, caribou, Dall Sheep, wolf, and brown bear game outside of the State of Alaska. *See* Plea Agreement, Dkt. 17, in *Dixon*. Like Dixon, the defendant in this case has "never been a registered guide-outfitter in the State of Alaska." Plea Agreement, Dkt. 29 at 4.

//

### 6. (a)(7): Need for Restitution

The government may present evidence at sentencing regarding the $2,500.00 referred to in the Plea Agreement at 29.

## V. CONCLUSION

The United States respectfully proposes the Court impose the sentence described above.

RESPECTFULLY SUBMITTED January 14, 2020, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/ Jonas M. Walker
JONAS M. WALKER
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2020, a true and correct copy of the foregoing was served electronically on the following:

Kevin Fitzgerald

s/ Jonas M. Walker
Office of the U.S. Attorney

U.S. v. Silvis
3:19-CR-00036-01-SLG